

Tagged Opinion

**ORDERED in the Southern District of Florida on October 10, 2008.**

*Paul G. Hyman, Chief Judge*
*United States Bankruptcy Court*

___

```
                UNITED STATES BANKRUPTCY COURT
                 SOUTHERN DISTRICT OF FLORIDA
                   WEST PALM BEACH DIVISION

In re:                              CASE NO. 08-10878-PGH

Omar Castillo,                      Chapter 7
Janelle Belardo,

     Debtors.
_____/
```

**<u>MEMORANDUM OPINION DENYING IN PART TRUSTEE'S MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)(1) BASED ON PRESUMPTION OF ABUSE ARISING UNDER 11 U.S.C. § 707(b)(2) AND ABUSE ARISING UNDER 11 U.S.C. § 707(b)(3) AND SETTING STATUS CONFERENCE</u>**

**THIS MATTER** came before the Court for hearing on June 24, 2008, upon the *United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) Based on Presumption of Abuse Arising Under 11 U.S.C. § 707(b)(2) and Abuse Arising Under 11 U.S.C. § 707(b)(3)* (the "Motion to Dismiss").

**PROCEDURAL POSTURE**

On May 23, 2008, Donald F. Walton, the United States Trustee (the "Trustee") filed the Motion to Dismiss, which seeks dismissal of the above-referenced Chapter 7 case on two separate grounds, § 707(b)(2) and (3).  At a preliminary hearing on June 24, 2008, the Court bifurcated the Motion to Dismiss to first consider dismissal pursuant to § 707(b)(2), and then only if necessary, to consider dismissal pursuant to § 707(b)(3).

For the reasons stated below, the Court denies the Trustee's Motion to Dismiss pursuant to § 707(b)(2) because the presumption of abuse does not arise in this case.

**UNCONTESTED FACTS**

Pursuant to the Court's briefing order, on August 25, 2008, the parties filed their *Joint Statement of Uncontested Facts Related to the Motion to Dismiss* ("Joint Stipulation").  The Court considered the following stipulated facts in adjudicating the Trustee's Motion to Dismiss.

Omar Castillo and Janelle Belardo (the "Debtors") filed for Chapter 7 relief on January 25, 2008.  The Debtors filed their Schedules, Statement of Financial Affairs, and *Chapter 7 Statement of Current Monthly Income and Means-Test Calculation* (the "Means Test" or "Form 22A") on February 2, 2008.  Mr. Castillo and Ms. Belardo's current monthly income ("CMI") are

2

$4,442.90[1] and $3,340.00, respectively.  Therefore, the Debtors' total CMI is $7,782.90.

The Debtors' Statement of Intention indicates an intent to surrender real property located at 3530 Blvd. Chatelaine, Delray Beach, FL (the "Property").  The Property secured both a mortgage held by Indymac and an equity line of credit provided by SunTrust.  Through a Bankruptcy Rule 7030 examination duces tecum, the Debtors disclosed that they made no mortgage payments subsequent to December 7, 2008.  On March 18, 2008, the Court entered an order granting IndyMac relief from the automatic stay to allow IndyMac to foreclose on the Property.

On Form 22A, the Debtors list the following payments related to debt secured by the Property: 1) IndyMac homestead 1st mortgage payment in the amount of $2,469.34 and 2) SunTrust homestead 2nd line of credit payment in the amount of $597.25.  On the Debtors' Means Test, a total deduction of $3,690.14 was taken for secured debt payments, of which amount $3,066.59 represents debt payments secured by the Property.

## **CONCLUSIONS OF LAW**

The Court has jurisdiction over this matter pursuant to

---

[1] The Court notes that on Form 22A, the Debtors stated Mr. Castillo's CMI was $4,139.87.  However, in the Joint Stipulation the parties indicated Mr. Castillo's total wages earned for the six months pre-petition from Best Buy and Mayors Jewelers was $6,168.06 and $20,489.31, respectively, which results in an average monthly gross income of $4,442.90.  This order does not resolve the difference in Mr. Castillo's CMI since the difference is immaterial to the Court's § 707(b)(2) analysis.

28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**A.   Introduction**

Under section 707(b)(1), the Court may dismiss a Chapter 7 case or permit the debtor to convert to Chapter 13 if the Court finds granting relief would be an abuse of Chapter 7 provisions. *In re Walker*, No. 05-15010-WHD, 2006 WL 1314125, at *1 (Bankr. N.D. Ga. May 1, 2006).  Section 707(b)(2)(A) sets forth the means test to determine whether it is presumptively abusive for a debtor to receive relief under Chapter 7.  The means test starts with a debtor's CMI calculated as the average monthly income received from all sources in the six month period ending on the last day of the calendar month preceding the commencement of the case.  *In re Henebury*, 361 B.R. 595, 602 (Bankr. S.D. Fla. 2007). In addition to deductions to CMI for living expenses as defined in § 707(b)(2)(A)(ii), a debtor may deduct average monthly payments for secured and priority debts pursuant to § 707(b)(2)(A)(iii).  The proper interpretation of § 707(b)(2)(A)(iii)(I) is at issue in this case.

Section 707(b)(2)(A)(iii)(I) states:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of -
>
> (I)  the total of all amounts scheduled as contractually due to secured creditors in

>           each month of the 60 months following the
>           date of the petition.

11 U.S.C. § 707(b)(2)(A)(iii)(I).

### B.     The Two Approaches to Interpreting "Scheduled as Contractually Due"

Courts have interpreted the phrase "scheduled as contractually due" in § 707(b)(2)(A)(iii)(I) differently resulting in two distinct approaches to the means test - the forward-looking approach and the snapshot approach. *See In re Prada*, 391 B.R. 492 (Bankr. S.D. Fla. 2008).

#### 1. The Forward-Looking Approach

The forward-looking approach interprets "scheduled as contractually due" to permit deductions on the means test for only those expenses the debtor reasonably expects to pay during the next sixty months. *In re Ray*, 362 B.R. 680 (Bankr. D.S.C. 2008); *In re Burden*, 380 B.R. 194 (Bankr. W.D. Mo. 2007); *In re Naut*, No. 07-20280REF, 2008 WL 191297 (Bankr. E.D. Pa. Jan. 22, 2008). Under this approach, a court considers future events, such as the surrender of collateral, to determine whether a debtor has the ability to repay general unsecured creditors. *In re Ray*, 362 B.R. at 685. Most courts employing the forward-looking approach conclude that § 707(b)(2)(A)(iii)(I) does not support the deduction of average secured credit payments on debt

5

secured by collateral that the debtor intends to surrender.[2]
*Id*. at 685; *In re Harris*, 353 B.R. 304, 309-10 (Bankr. E.D. Okla. 2006); *In re Skaggs*, 349 B.R. 594, 599-600 (Bankr. E.D. Mo. 2006). The Trustee urges the Court to adopt the forward-looking approach by asserting three linguistic arguments and one policy argument.

First, relying on *In re Burden*, the Trustee avers that Congress' use of the phrase "scheduled as contractually due" indicates that secured debts are deductible only to the extent they are on a debtor's Schedules, Statements, and Statement of Intention as debt to be paid in the 60 months after the petition date. 380 B.R. 194. The *Burden* Court interpreted "'scheduled' as a reference to a debtor's Statement of Intention." *Id.* at 201. It concluded that whether debt is "scheduled" depends on "how the debt is listed in a debtor's schedules and statements." *Id.* at 200. Under the *Burden* approach, debt is not "scheduled as contractually due" where a debtor indicates an intent to surrender on the Statement of Intention. *Id.* at 200-03.

The Court disagrees with this analysis because § 707(b)(2)(A)(iii)(I) makes no reference to a debtor's Statement of Intention. It only allows for deductions for debt scheduled

---

[2] However, the forward-looking approach itself is open to variations. In *In re Singletary*, the Court determined that a deduction is appropriate where the stay had been lifted and the collateral surrendered but inappropriate where the debtor only checked the surrender box on the Statement of Intention. 354 B.R. 455, 467-68 (Bankr. S.D. Tex. 2006).

as contractually due to secured creditors.  Therefore, "as a matter of statutory construction the Statement of Intention cannot be morphed into the 'Schedules.'" *In re Anderson*, 383 B.R. 699, 707 (Bankr. S.D. Ohio 2008).  Moreover, "[r]egardless of a debtor's intention to surrender property, the fact remains that payments are 'contractually due.'"  *In re Rudler*, 388 B.R. 433, 438 (B.A.P. 1st Cir. 2008)(citations omitted).

Second, the Trustee contends that Congress' use of "following" in § 707(b)(2)(A)(iii)(I) contemplates the use of future expenses to determine whether a debtor will have sufficient disposable income going forward.[3]  Relying upon the dictionary definition of "following" as "subsequent to" or "next in the order of time," the Trustee argues that "following" is properly interpreted to permit only deductions for amounts that will actually be due in each of the 60 months post-petition.  The Court does not agree.

Section 707(b)(2)(A)(iii)(I) does not require the Court to determine whether a debtor will actually make all payments required under the contracts in all sixty months following the date of petition.  "[T]he plain language of the statute does not contemplate the Court assuming this kind of predictive role." *In re Hayes*, 376 B.R. 55, 63 (Bankr. D. Mass 2007).  "'Congress

---

[3] Section 707(b)(2)(A)(iii)(I) states in part "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months *following* the date of the petition."  11 U.S.C. § 707(b)(2)(A)(iii) (emphasis added).

chose to base the means test on historic income and expense figures that are in effect on the petition date, as opposed to figures that may change with the passage of time or with a change in the debtor's lifestyle.'"  *In re Benedetti*, 372 B.R. 90, 96 (Bankr. S.D. Fla. 2007)(*quoting In re Walker*, 2006 WL 1314125, at *5).  Moreover, if Congress meant to permit only deductions for secured debt payments actually paid in the 60 months post-petition, "it knew how to do so, as reflected by the inclusion of the terms 'actual monthly expenses' and 'actual expenses' elsewhere within 11 U.S.C. § 707(b)(2)(A)(ii)(I) and (II)."  *Id.* at 96 (*citing In re Oliver*, No. 06-30076RLD13, 2006 WL 2086691 (Bankr. D. Ore. June 29, 2006)).

Third, the Trustee contends that an examination of § 707(b)(2)(A)(iii)(I) in context with its conjunctive partner § 707(b)(2)(A)(iii)(II) reinforces the conclusion that § 707(b)(2)(A)(iii)(I) applies only to payments on debts secured by collateral that a debtor intends to keep.[4]  Citing *Burden* again, the Trustee asserts that § 707(b)(2)(A)(iii)(II) contemplates an evaluation of a debtor's intention to maintain possession of property, and therefore § 707(b)(2)(A)(iii)(I) should be read to allow deductions only where a debtor intends to

---

[4] Section 707(b)(2)(A)(iii)(II) allows deductions for "any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts."  11 U.S.C. § 707(b)(2)(A)(iii)(II).

8

retain property.  380 B.R. at 201-02.

The Court does not agree that § 707(b)(2)(A)(iii)(II) speaks to a debtor's intent to maintain possession of the debtor's "primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts."  Section 707(b)(2)(A)(iii)(II) merely allows a deduction on the means test for payments necessary to cure any pre-petition arrearage for such property.  The Trustee relies on the *Burden* Court's statement that "it would be absurd to permit a Chapter 13 debtor who indicates his intent to surrender his residence to claim a deduction for his regular mortgage payments, but to deny him, under § 707(b)(2)(A)(iii)(II), a deduction for any pre-petition arrearage," or to disallow "a debtor's deduction for 'additional' payments on his 'primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents' because he intends to surrender [them] but [permit] the debtor to deduct payments on other debts secured by property to be surrendered . . . ."  *Id.* at 202.  While these considerations may be relevant in the context of an objection to confirmation of a Chapter 13 plan, they are not germane to the calculation of the means test to determine whether it is presumptively abusive for a debtor to receive Chapter 7 relief.

Lastly, the Trustee argues that disallowing deductions where

a debtor exhibits an intent to surrender collateral advances Congress' purpose of ensuring that a debtor who can repay debts does. "Courts may only delve into what Congress intended, however, where the statute is ambiguous, or where a plain reading would result in an absurd result or one demonstrably at odds with congressional intent." *In re Rudler*, 388 B.R. at 439 (*citing Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004)). The Court does not find ambiguity in the statute. As discussed below, neither does the Court find that the literal application of the statute produces results demonstrably at odds with congressional intent. Therefore, the Court refrains from reading judicial discretion into § 707(b)(2)(A)(iii)(I). "'The Supreme Court and [the Eleventh Circuit] have warned on countless occasions against judges "improving" plain statutory language in order to better carry out what they perceive to be the legislative purposes.'" *In re Prada*, 391 B.R. at 498 (*citing In re Bracewell*, 454 F.3d 1234, 1240 (11th Cir. 2006)) (alteration in original).

### 2. The Snapshot Approach

The snapshot approach interprets § 707(b)(2)(A)(iii)(I) to require deduction of payments "scheduled as contractually due" as of the petition date, regardless of whether the debtor actually intends to make the payments. *In re Prada*, 391 B.R. 492; *In re*

10

*Benedetti*, 372 B.R. 90; *In re Walker*, 2006 WL 1314125; *In re Rudler*, 388 B.R. 433.  Under the snapshot approach, the term "scheduled" is defined to mean "to plan for a certain date." *In re Walker*, 2006 WL 1314125, at *3.  "This interpretation gives meaning to the word 'scheduled,' which implies the possibility that the payments may not be made as required under the contract, either because the debtor will surrender the collateral or because the payments might be modified and paid through a Chapter 13 plan."  *Id.* at *4.  The phrase "contractually due" permits deduction of all secured debts, regardless of whether collateral is surrendered because surrender alone does not change the status of the payments as contractually due.  *Id*.  When § 707(b)(2)(A)(iii)(I) is read as a whole, the words "'scheduled as contractually due to secured creditors' does not require, as a prerequisite to allowing the deduction, that those debts *actually* be paid 'in each month of the 60 months following the date of the petition.'"  *In re Benedetti*, 372 B.R. at 95.  Instead, "[s]ection 707(b)(2)(A)(iii) directs a deduction for all of the debt that will become contractually due in the five years after the filing of the bankruptcy case, without regard to whether the property securing the debt is necessary and without regard to whether the payments are actually made."  *Id.*

Under the snapshot approach, the means test is a mechanical test "based only superficially on a debtor's reality, the purpose

11

of which is to create a bright line presumptive test of eligibility." *In re Prada*, 391 B.R. at 497. This approach comports with the Court's previous conclusion that "'[t]he means test presents a backward looking litmus test performed using mathematical computations of arbitrary numbers, often having little to do with a particular debtor's actual circumstances and ability to pay a portion of debt. Congress has already determined the fairness of application of the means test, and a major objective of the legislation was to remove judicial discretion from the process.'" *In re Henebury*, 361 B.R. at 603 (*quoting In re Hartwick*, 352 B.R. 867, 868 (Bankr. D. Minn 2006), *aff'd in relevant part, rev'd in part sub nom. Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007)). Thus, the Court finds that the snapshot approach correctly interprets § 707(b)(2)(A)(iii)(I).

Courts within the Southern District of Florida have also adopted the snapshot approach for calculating the means test. Judge Cristol and Judge Isicoff both allow, "'for purpose of the means test calculation, a deduction from CMI for amounts that would have been due, but which [Debtors] may not pay, to secured creditors on account of property [they intend] to, and in fact [do] surrender after the petition date.'" *In re Prada,* 391 B.R. at 498 (*quoting In re Benedetti*, 372 B.R. at 97)(alterations in original). In *In re Benedetti*, Judge Cristol permitted a debtor

to deduct on the means test monthly lease payments for a car the debtor intended to surrender.  372 B.R. at 97.  Likewise, in *In re Prada*, Judge Isicoff allowed the debtors to deduct payments for a condominium and vehicle they intended to surrender.  391 B.R. at 498.

The means test determines whether it is presumptively abusive to allow a debtor to receive Chapter 7 relief.  However, even when the § 707(b)(2) presumption of abuse does not arise, § 707(b)(3) provides for dismissal if a debtor's filing is abusive under the totality of the circumstances of the debtor's financial situation.  Under § 707(b)(3), in appropriate situations, the Court may consider post-petition events relevant to a debtor's financial situation.  *See, e.g., In re Henebury*, 361 B.R. 595.

## **CONCLUSION**

For the reasons stated above, the Court finds that the presumption of abuse under § 707(b)(2) does not arise in this case.  The Debtors appropriately deducted payments for debt secured by the Property on their Means Test even though they indicated an intent to surrender the Property in their Statement of Intention.  Accordingly, the Court denies in part the Trustee's Motion to Dismiss because the presumption of abuse does not arise under 11 U.S.C. § 707(b)(2).

**ORDER**

The Court, having reviewed the applicable law, the submissions of the parties, and having been otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES:**

1) The Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(1) based on presumption of abuse arising under 11 U.S.C. § 707(b)(2) is **DENIED.**

2) The Status Conference is set before the Honorable Paul G. Hyman, Jr. to consider the Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(3) on October 28, 2008 at 9:30 a.m., at the United States Bankruptcy Court, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, West Palm Beach, Florida.

###

Copies furnished to:

Kevin C. Gleason, Esq. is directed to serve a copy of this order on all unlisted parties and to file a certificate of service with the Court.

Deborah Menotte

Heidi A. Feinman